UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL SHAVERS #378021,                )
                                        )
         Plaintiff,                     )   Case No. 2:07-cv-105
                                        )
v.                                      )   Honorable Robert Holmes Bell
                                        )
KENNETH MCKEE, et al.,                  )
                                        )
         Defendants.                    )
_____)

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all of the named Defendants, except for Defendant Hadden. The Court will serve the complaint against Defendant Hadden.

**Discussion**

     I.     Factual allegations

Plaintiff Michael Shavers, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Kenneth McKee, Corrections Officer Unknown Pung, Corrections Officer R. McWilliams, Deputy Warden R. Bell, Unknown Party John Doe I, Counselor Brian Hadden, Deputy Warden B. Meagher, Warden Thomas Birkett, Deputy Warden B. Luetzow, Warden B. McLemore, Deputy Warden C. Aalto, Warden Gerald Hofbauer, Deputy Warden L. Rapelje, and Warden D. Bergh.

In his complaint, Plaintiff claims that on June 3, 2004, Plaintiff was confined at the St. Louis Correctional Facility (SLF). While at SLF, Plaintiff told the psychologist that he needed protection because the brother of his victim was also confined within the MDOC system. His victim's brother is named Wyatt Strickland, and is a high-ranking member of a prison gang called "Mo-Bite." The SLF psychologist searched the computer and located the prisons where Strickland and many of his relatives were confined. Plaintiff was placed in temporary protective segregation and was transferred to a protective segregation unit at the Bellamy Creek Facility (IBC) on June 11, 2004.

On October 22, 2004, when Plaintiff and other protective segregation inmates were released for chow, Defendant Pung left his post, which allowed Plaintiff to be attacked by another inmate. Defendant McWilliams heard the commotion and ran from his post to stop the assault on Plaintiff. Plaintiff and the inmate who had assaulted him were placed in temporary segregation pending an investigation. Defendant McWilliams subsequently wrote a misconduct report charging Plaintiff with assault and Plaintiff was ultimately found guilty and was sentenced to loss of

privileges, good time and administrative segregation. Plaintiff claims that this misconduct ticket was written in order to cover up the fact that Defendant's Pung had left his post.

Plaintiff claims that prior to this incident, he had witnessed several officers, including Defendants Pung and McWilliams, leave their posts when they were supposed to be watching prisoners in the protective segregation unit. Plaintiff also states that he witnessed other inmate victims of assaults being subjected to false misconduct tickets in order to cover up the fact that prison officials, including Defendants Pung and McWilliams, left their security posts. Plaintiff alleges that since his placement in administrative segregation on November 2, 2004, he has filed multiple grievances against Defendant Hadden asserting interference with legal mail to Plaintiff's attorney in *Cain v. MDOC* litigation.

Plaintiff alleges that Defendant Hadden received a phone call from Plaintiff's sister and his attorney on February 19, 2005, and that during the phone call, Defendant Hadden "indirectly" made racial comments. Defendant Hadden denied this claim on March 4, 2005. Plaintiff also claims that Defendant Hadden improperly read his outgoing legal mail to the United States District Court in February of 2005. Plaintiff states that he observed Defendant Hadden making "direct and indirect" racial comments to inmates and that Defendant Hadden previously retaliated against inmates for filing grievances against him. Plaintiff alleges that on March 25, 2005, Defendant Hadden retaliated against Plaintiff by effectuating a reclassification from IBC protective segregation to SMF administrative segregation. This action was approved by Defendants McKee, Bell and John Doe. Plaintiff asserts that he wrote a letter to MDOC Director Patricia Caruso complaining of the October 22, 2004 assault. On January 3, 2005, Deputy Director Dennis Straub ordered Defendant McKee to conduct an investigation. On January 20, 2005, Defendant McKee responded by citing

the disciplinary hearing report. On February 1, 2005, Plaintiff sent a second letter of complaint to Mr. Straub and on February 22, 2005, MDOC Regional Prison Administrator Ray M. Wolfe responded to the complaint by stating that the matter had already been addressed.

Plaintiff claims that on January 10, 2005, and on January 17, 2005, he filed step I grievances on Defendants McKee, Bell and John Doe I, alleging that they knowingly approved of certain prison escorts in order to jeopardize the safety of protective segregation inmates. These grievances were rejected as untimely. On March 11, 2005, Plaintiff filed a step I grievance on Defendant McKee for placing his grievances in his prison file in violation of MDOC policy. This grievance was rejected as untimely. On March 14, 2005, Plaintiff filed a step I grievance on Defendants McKee, Bell and John Doe I, alleging that they knowingly allowed staffers to threaten protective segregation prisoners with misconducts if they refused to leave the safety of protective segregation to go to administrative segregation in the evenings. This grievance was rejected as untimely. On April 11, 2005, Plaintiff filed a step I grievance on Defendants McKee, Bell, and John Doe I, alleging that they had improperly reclassified him and transferred him to SMF in retaliation for his use of the grievance procedure. This grievance was rejected for containing multiple issues and for being untimely.

Plaintiff asserts that over the years he has seen many other protective segregation inmates subjected to unsafe conditions, given false misconduct tickets, and otherwise treated unfairly in retaliation for using the grievance system. Defendants McKee, Bell, and John Doe I failed to prevent their subordinates' misconduct, which encouraged the unconstitutional actions of Defendants Pung and McWilliams on October 22, 2004.

Plaintiff states that Defendants Meagher and Birkett were aware that his transfer to SMF was retaliatory and recklessly disregarded the risk of harm to Plaintiff. Defendant Meagher responded to a grievance by Plaintiff, stating that the transfer was proper. On October 12, 2005, Plaintiff was transferred from SMF to administrative segregation at the Baraga Maximum Correctional Facility (AMF). On October 13, 2005, Defendants Luetzow and McLemore received Plaintiff's grievance, which asserted that the transfer was retaliatory. This grievance was denied. Plaintiff alleges that during his confinement in administrative segregation at both SMF and AMF, he lived in constant fear of being assaulted with human waste while in the administrative segregation yard. Plaintiff further states that two inmates who had attempted to assault him while Plaintiff was in jail were housed in the same housing block as Plaintiff at AMF, and that they made sure that other inmates knew that there was a contract out on Plaintiff. Plaintiff claims that he was repeatedly assaulted by these two prisoners, and that he complained to staff to no avail. Plaintiff then filed a grievance and was subsequently transferred to the Marquette Branch Prison (MBP).

On February 21, 2006, after arriving at MBP, Plaintiff filed a grievance asserting that the transfer was retaliatory. This grievance was reviewed by Defendants Aalto and Hofbauer, who rejected it on March 15, 2006, because Plaintiff had not attempted to resolve the issue prior to filing the grievance. Plaintiff states that while he was in administrative segregation at MBP, he lived in constant fear of possible attacks by general population prisoners while in the administrative segregation yard. On April 10, 2006, Plaintiff was transferred to the administrative segregation unit in the Alger Maximum Correctional Facility (LMF). Plaintiff filed a grievance regarding this transfer on April 30, 2006, asserting that it was retaliatory. Plaintiff states that the grievance coordinator returned the grievance to him without processing it. On May 15, 2006, Plaintiff wrote

a letter explaining the situation to Defendant Repelje, but received no response. On May 21, 2006, Plaintiff wrote a letter to Defendant Bergh and again received no response. On May 25, 2006, Plaintiff filed a step III grievance directly to James Armstrong at the MDOC Prisoner Affairs Division. Plaintiff never received a response to this grievance. Plaintiff claims that he has not attended administrative segregation yard for at least one year because of his fear of being assaulted.

Plaintiff claims that Defendants violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his First Amendment rights by writing false retaliatory grievances on him and transferring him from protective segregation to administrative segregation. The Supreme Court has held that a claim for declaratory relief and monetary damages that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983

until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges), *cert. denied*, 122 S. Ct. 1795 (2002). *See also Muhammad v. Close*, 540 U.S. 749 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under

Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Misconduct Report is received. MICH. COMP. LAWS § 791.254; Policy Directive 03.03.105, ¶ DDD. Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[1] Accordingly, because Plaintiff has not shown that his convictions have been invalidated, his claims regarding the retaliatory misconduct tickets and subsequent placement in administrative segregation are not presently cognizable. *See Morris v. Cason*, No. 02-2460, 2004 WL 1326066 (6th Cir. June 10, 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, No. 03-1411, 2003 WL 22976618 (6th Cir. Dec. 8, 2003) (same); *Harris v. Truesdell*, No. 03-1440,

---

[1] A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

2003 WL 22435646 (6th Cir. Oct. 23, 2003) (*Heck*-barred claim fails to state a claim and is frivolous).

Plaintiff also claims that his transfers between prisons were motivated by a desire to retaliate against him for his use of the grievance system. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff in this case merely

alleges the ultimate fact of retaliation with regard to his transfers. He has alleged no facts to support his conclusion that he was transferred from one prison to another because Plaintiff had filed grievances against various Defendants. Accordingly, his speculative allegations fails to state a claim.

In addition, Plaintiff claims that Defendants violated his rights under the Eighth Amendment by failing to protect him from being assaulted by other prisoners, first in the chow hall while in protective segregation at IBC, and again while he was confined in administrative segregation at various locations. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir.1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregard [ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 829, 847.

Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners. *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998), *cert. denied*, 525 U.S. 1139, 119 S. Ct. 1028 (1999). However, not all injuries suffered by an inmate at

the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment. Instead, the deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities. *Id.* at 600-01 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)). In addition, prison officials must exhibit deliberate indifference to the health or safety of the inmate. *Id.* Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence. Plaintiff in this case fails to make any factual allegations regarding the type of injury, if any, that he suffered. Nor does plaintiff specifically allege what measures he took in order notify the named defendants of a specific threat to his health. The Supreme Court has noted that "extreme deprivations are required to make out a conditions-of-confinement claim," as opposed to an excessive force claim. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). No such egregious failures on the part of prison officials have been established here. Plaintiff has been confined to either protective segregation or administrative segregation for the past several years and has alleged no facts showing that any of the named Defendants deliberately placed him in a situation where he would be attacked. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Plaintiff claims that Defendant Hadden violated his Fourteenth Amendment rights by making "indirect" racial remarks to Plaintiff's sister and his attorney on February 19, 2005. However, the Sixth Circuit has held that the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See, Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985). Moreover, Plaintiff's claim is completely

vague and does not concern any conduct directed towards himself. Therefore, Plaintiff's equal protection claim against Defendant Hadden is properly dismissed.

The court concludes that Plaintiff's claims that Defendant Hadden violated his rights under the First Amendment by interfering with outgoing legal mail to his attorney and to the United States District Court are nonfrivolous and may not be dismissed at this time.

Finally, the court notes that Plaintiff's pending motion for a temporary restraining order (docket #2) pertains to his claims against Defendants which are being dismissed from this action. Therefore, Plaintiff's motion is properly denied as moot.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Warden Kenneth McKee, Corrections Officer Unknown Pung, Corrections Officer R. McWilliams, Deputy Warden R. Bell, Unknown Party John Doe I, Deputy Warden B. Meagher, Warden Thomas Birkett, Deputy Warden B. Luetzow, Warden B. McLemore, Deputy Warden C. Aalto, Warden Gerald Hofbauer, Deputy Warden L. Rapelje, and Warden D. Bergh will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Hadden.

An Order consistent with this Opinion will be entered.


Date:     September 19, 2007             /s/ Robert Holmes Bell
                                         ROBERT HOLMES BELL
                                         CHIEF UNITED STATES DISTRICT JUDGE