UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL SHAVERS,

    Plaintiff,

v.                                                                Case No. 2:07-cv-105
                                                                HON. ROBERT HOLMES BELL

KENNETH MCKEE, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Shavers, an inmate currently confined at the Marquette Branch Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). On initial review, and by two separate orders, this court dismissed this case. This case was remanded, in part, on plaintiff's retaliation claims. Plaintiff has voluntarily moved to dismiss defendants William Luetzow, Catherine Aalto, Lloyd Rapelje and Robbin Bell (Docket #164). The remaining defendants are Warden Kenneth McKee, Deputy Warden B. Meagher, Warden Thomas Birkett, Warden B. McLemore, Warden Gerald Hofbauer and Warden D. Bergh. The Sixth Circuit stated:

> Shavers alleged that he was subjected to retaliation for filing his grievances. To state a claim of retaliation, a plaintiff must establish that: 1) he engaged in protected conduct; 2) he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct; and 3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id.* at 395. An inmate has a First Amendment right to file grievances against prison

> officials. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, the right is protected only if the grievances are not frivolous. *Id.* Conclusory allegations of retaliation are insufficient to state a claim. *Figel v. Overton*, 121 F. App'x 642, 648 (6th Cir. 2005); *Ana Leon T. v. Fed. Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir. 1987).
>
> In his complaint, Shavers alleged that his transfers were in retaliation for his grievances. After reviewing the facts of the case, we conclude that Shavers met his burden under *Thaddeus-X* to establish a retaliation claim. Therefore, we reverse the district court's order regarding Shavers's allegations of retaliation.

(Docket #42 at 2-3.)

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also*

*Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Hofbauer and Meagher argue that they lacked personal involvement in plaintiff's classification. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a

time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990). Plaintiff's claim against defendant Hofbauer is that he made defendant Hofbauer aware of the alleged retaliatory act after he was transferred and defendant Hofbauer failed to remedy the situation. Plaintiff Hofbauer was not allegedly involved, according to plaintiff, in the alleged retaliatory action. Plaintiff contends that due to defendant Hofbauer's supervisory position, he should have remedied the asserted wrongful conduct once plaintiff made defendant Hofbauer aware of the conduct after plaintiff was transferred. In the opinion of the undersigned, defendant Hofbauer is entitled to dismissal from this lawsuit because plaintiff has not shown that defendant Hofbauer was involved in any alleged retaliatory conduct involving plaintiff's prison transfers. Similarly, plaintiff has failed to show that defendant Meagher was involved in the classification, administrative segregation assignments or transfers of plaintiff.

The remaining defendants argue that plaintiff was transferred to different prisons for legitimate reasons and not in retaliation for grievance activity. Defendants have set forth the reasons for plaintiff's transfers and reclassifications as follows:

> A Security Classification Notice of 3-31-04 shows that due to six major misconduct tickets from 8-6-02 to 3-3-04, Plaintiff was reclassified and transferred to from DRF to Level IV at SRF (Saginaw) on 4-14-04, "to separate fighters." On 6-2-04, he was transferred to SLF (St. Louis) Level IV "so that prisoner may re-enter general population, prisoner is currently on temp seg for PC." On 6-9-04, he was transferred from SLF Level IV to IBC (Bellamy Creek) Level V because "Prisoner has requested Protection six times since being incarcerated. Request transfer to IBC long term protection." Plaintiff was on Protection status, until he assaulted another prisoner on 10-22-04, which caused his reclassification to Administrative Segregation on 11-2-04. On 3-30-05, he was transferred from IBC Level V to SMF (Standish) Level V "to separate prisoner from SPON at IBC." On 10-11-05, he transferred from SMF Level V, administrative segregation to AMF (Baraga) Level V, administrative segregation, "to facilitate an exchange of prisoners, due to incoming writ prisoner." On 1-27-06, he transferred from AMF Level V, administrative segregation to MBP (Marquette) Level V administrative segregation "to facilitate SPON separation. Prisoner has a history of claiming protection needs." On 4-11-06, he transferred from MBP level V administrative segregation to LMF (Alger) Level V administrative segregation for a "bed space transfer following an OCF disturbance." At LMF, Plaintiff remains in Administrative Segregation because his behavior has not warranted a reduction in custody; he continues to receive major misconducts, including Insolence to staff on 3-30-09, spitting on an officer on 3-31-09, assaulting another officer on 3-31-09, and threatening staff on 4-2-09.

(Docket #98 at 8-9.)

Plaintiff has made no effort to rebut defendants' motion for summary judgment with any conflicting evidence that shows a genuine issue of material fact. In fact, plaintiff merely claims that defendants Birkett, McLemore, Hofbauer and Bergh were made aware of the alleged retaliatory

- 5 -

transfers by plaintiff's grievance filings. In the opinion of the undersigned, plaintiff has failed to demonstrate that he was transferred for retaliatory reasons.

Plaintiff has filed a motion for copies of exhibits that he previously filed with the court as attachments to one of his own motions. Plaintiff has asserted that he needs his own exhibits to fully respond to defendants' motion. Plaintiff could obtain copies of pleadings and exhibits filed in this case from the Clerk's Office. A separate order is unnecessary. Plaintiff also requests an MDOC transfer list of all his SPONs produced to "support his above contention. It's possible plaintiff may have had more than one SPON prisoner as IBC from his June 9, 2004, through March 30, 2005." Plaintiff contends that such a list will help decide if the asserted reason for his transfer from IBC to SMF, to separate him from his SPON, was in fact a pretext for a retaliatory action. The Michigan Department of Corrections Transfer Order dated March 29, 2005, indicates that "transfer is requested to separate prisoner from SPON at IBC." (Docket #98, Ex. D-1). Plaintiff has presented no evidence that suggests that the transfers were for another purpose.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. Defendants have shown that plaintiff was transferred to different prisons for legitimate reasons. Plaintiff has made no showing that defendants took any retaliatory action. At best plaintiff alleges that some of the defendants are liable because plaintiff made them aware, after the fact, by filing grievances that he was transferred in retaliation for his previous grievances filings. The factual evidence does not support a conclusion that plaintiff was retaliated against. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

Plaintiff has alleged that exhibits to his responsive pleading were stolen by LMF prison officials. Plaintiff claims that exhibits he provided to a prison officer for the court were not docketed. Plaintiff filed a motion for a protective order (Docket #157) prior to filing his responsive pleading, explaining that he believed that some of his exhibits would be stolen because it had happened in an unrelated case in the past. Plaintiff has filed a motion for an order that defendants produce the stolen exhibits and that sanctions be issued (Docket #176). Plaintiff also requests that summary judgment be denied. There is no proof or evidence that the exhibits were stolen. Plaintiff has not explained how the alleged stolen exhibits are relevant to this case.

Plaintiff has also filed a motion for a temporary restraining order and preliminary injunction (Docket #178) to prevent his placement in general population and for his reclassification from administrative segregation at MBP to protective segregation at IBC. Plaintiff also requests that misconduct tickets written against him for violating orders to pack up his property for a transfer to general population be expunged from his record.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3 (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights. Plaintiff claims that he was retaliated against by defendant McKee when he was reclassified from IBC protective segregation status to SMF administrative segregation status. In the opinion of the undersigned, defendants have shown that plaintiff was reclassified and transferred for non retaliatory reasons. Plaintiff has not satisfied his burden of showing a likelihood of success on the merits of his claims. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motions for summary judgment. Accordingly, it is recommended that defendants' motions for summary judgment (Docket #97, #131 and #152) be granted and this case be dismissed in its entirety. It is further recommended that plaintiff's motion to dismiss parties (Docket #164) and motion to replace exhibits (Docket #180) be granted. Finally, it is recommended that plaintiff's remaining motions (Docket #126,#157, #165, #176 and #178) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting defendants' motions for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 27, 2010